UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RENEE D.,

                Plaintiff,

v.                                                    5:17-CV-0667
                                                        (DJS)

COMM'R OF SOC. SEC.,

                Defendant.
_____

**APPEARANCES:**                                  **OF COUNSEL:**

LAW OFFICES OF STEVE R. DOLSON      STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.             LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER[1]

Currently before the Court, in this Social Security action filed by Renee D. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's Motion for Judgment on the

---

[1] Upon Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 7 & 11. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1963, making her 48 years old at the alleged onset date and 52 years old at the ALJ's decision. Dkt. Nos. 6 & 6-1, Admin. Tr. (hereinafter collectively referred to as "Tr.") at p. 253. Plaintiff reported completing two years of college. Tr. at p. 285. Plaintiff has past work as a resident supervisor and attendant. *Id.* At the initial review level, Plaintiff alleged disability due to chronic pain in her legs, groin and back, depression, anxiety, fibromyalgia, and breast cancer in remission. Tr. at p. 284.

### B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on August 15, 2013, alleging disability beginning May 1, 2012. Tr. at p. 175. Plaintiff's application was initially denied on April 17, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 175 & 191-192. Plaintiff appeared at a hearing before ALJ F. Patrick Flanagan on August 13, 2015. Tr. at pp. 130-162. On November 17, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 110-129. On May 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at p. 1.

## C. The ALJ's Decision

The ALJ made the following seven findings of fact and conclusions of law.[2] Tr. at pp. 116-24. First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. Tr. at p. 116. Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2012, the alleged onset date. *Id*. Third, the ALJ found that Plaintiff's alleged impairments including an old fracture of the pubic rami on the right, mild degenerative joint disease of the hip, chronic low back, bilateral hip and pelvic pain of unknown etiology, depression/anxiety disorder, and fibromyalgia are severe impairments. *Id*. Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 116-18. Specifically, the ALJ considered the criteria of Listings 1.02 (major dysfunction of a joint), 12.04 (affective disorders), and 12.06 (anxiety related disorders). *Id*. Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except

> she can only occasionally stoop and occasionally reach. The claimant can follow and understand simple directions and instructions; perform simple tasks independently; maintain attention/concentration so long as the tasks are relatively unchanging; can accept instruction from supervisors; and can relate superficially with coworkers and the public but cannot engage in arbitration, confrontation or be responsible for the

---

[2] In his decision, the ALJ also indicated he did not find a basis for reopening Plaintiff's prior Title XVI application because it was too remote in time and there was no evidence of fraud, similar fault, clerical error, or other basis for reopening or revising the determination at any time. Tr. at pp. 113-14.

>     safety of others. The claimant cannot perform fast paced,
>     production rate tasks.

Tr. at pp. 118-19. Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. at pp. 122. Finally, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 123-24. The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

*1. Plaintiff's Motion for Judgment on the Pleadings*

Plaintiff argues the ALJ committed reversible error by finding that a significant number of jobs exist in the national economy that Plaintiff can perform. Dkt. No. 7, Pl.'s Mem. of Law at pp. 4-6. Specifically, Plaintiff argues that the positions (including counter clerk, tanning salon attendant, and shipping/receiving weigher) identified by the vocational expert ("VE") constitute only 5,688 positions available in the national economy, which is not a significant number. *Id*. at p. 5. Plaintiff also argues that the total number of jobs drops to 4,685 when the jobs for the tanning salon attendant position are excluded because this position (and the corresponding DOT code identified by the VE) do not exist in the Dictionary of Occupational Titles ("D.O.T."). *Id*.

*2. Defendant's Motion for Judgment on the Pleadings*

Defendant argues that, at Step Five, jobs existed in significant numbers in the national economy that Plaintiff could perform. Dkt. No. 11, Def.'s Mem. of Law at pp. 5-8. Specifically, Defendant argues that there is no bright line standard as to what constitutes a

significant number of jobs, and that, under the circumstances, 5,688 jobs constitutes a significant number of jobs existing in the national economy that Plaintiff could perform. *Id*. at p. 7. Defendant also argues that Plaintiff's assertion regarding the tanning salon attendant position should fail because there was an update adding 23 occupations with unpublished D.O.T. codes and titles, which included tanning salon attendant, and there is a D.O.T. code 359.567-014 for tanning salon attendant when conducting an Occupational Information Network ("O-Net") search, which is sponsored by the Department of Labor. *Id*. at pp. 7-8.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential

evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. The ALJ's Step Five Determination

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to

-7-

show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d at 151 (citing 20 C.F.R. § 404.1520(a)(4)(v)). "'Courts have generally held that what constitutes a "significant number" is fairly minimal.'" *Rosa v. Colvin*, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2015) (quoting *Fox v. Comm'r of Soc. Sec.*, 2009 WL 367628, at *3 (N.D.N.Y. Feb. 13, 2009)). "[O]ther courts have found that as little as 10,000 jobs can constitute a significant number for the purpose of a Step Five finding." *Waldvogel v. Comm'r of Soc. Sec.*, 2017 WL 3995590, at *13 (N.D.N.Y. Sept. 11, 2017) (citing *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015)).

Here, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform, including counter clerk (D.O.T. 249.366-010), tanning salon attendant (D.O.T. 359.567-014), and shipping/receiving weigher (D.O.T. 222.387-074) as identified by the VE. Tr. at pp. 123-24. *See also* DICTIONARY OF OCCUPATIONAL TITLES (U.S. Dep't of Labor, 4th Ed., rev. 1991). The ALJ noted that the VE indicated there were 430,700 counter clerk jobs nationally with 2,834 of those jobs being specific to that job title, 18,910 tanning salon attendant jobs with 823 of those jobs being specific to that job title, and 69,990 shipping/receiver weigher jobs with 2,031 of those jobs being specific to the job title. Tr. at pp. 123 & 156-58. Plaintiff argues that the total number of jobs, at only 5,688, does not constitute a significant number of jobs, rendering the Step Five determination

unsupported by substantial evidence. Pl.'s Mem. of Law at pp. 4-6. For the reasons that follow, I conclude that the matter should be remanded for further proceedings.

The Court's review of the VE testimony indicates this testimony was vague as to the number of jobs identified by the VE. Regarding the identified positions, the VE testified there were 430,700 jobs by "national OES" numbers and 2,834 "national Job Browser Pro numbers specific to the DOT title" for the counter clerk position, 18,910 "OES numbers nationally" and 823 Job Browser Pro jobs for the tanning salon attendant position, and 69,990 "[n]ational numbers OES" and 2,031 "Job Browser Pro national" numbers for the shipping and receiving weigher position. Tr. at pp. 157-58. The VE did not indicate whether the "national OES" numbers included jobs which would be unavailable to Plaintiff based on exertional or non-exertional limitations found in her RFC and provided no further explanation regarding these significantly larger numbers compared to those found in the Job Browser Pro data. *Id*. The ALJ did not further question the VE for any explanation regarding these numbers or do any questioning as to why the VE was using two different sources (OES and Job Browser Pro) to come up with such drastically different "national" numbers. *Id*.

The ALJ failed to address this vague testimony. In his decision, the ALJ notes these numbers with the implication that the larger numbers are the amount of counter clerk, tanning salon attendant, and shipping/receiver weigher jobs available nationally and the smaller number representing the number "specific to said job title" and finds the number of jobs to

be significant. Tr. at pp. 123. The ALJ does not otherwise discuss or explain how this constitutes a significant number of jobs in the national economy Plaintiff can perform, nor even specify which set of statistics he relied on in determining the numbers were significant. Nor did the ALJ address in any way the vast disparity in job numbers discussed above.

This Court has noted "that[,] because the DOT codes do not report the number of available jobs in the national economy, VEs 'must obtain additional information to assess whether positions exist for the occupations disability claimants can still perform.'" *Walker v. Colvin*, 2016 WL 4768806, at *7 (N.D.N.Y. Sept. 13, 2016) (quoting *Vandermark v. Colvin*, 2015 WL 1097391, at *12 (N.D.N.Y. Mar. 11, 2015); citing *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 446 (2d Cir. 2012)). Further, the Second Circuit has noted "the marked absence of any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation" and has concluded that "[t]he ALJ [does] not need to find specific numbers of jobs – all he [is] required to do [is] find that 'substantial' positions exist." *Brault v. Soc. Sec. Admin.*, 683 F.3d at 450; *Walker v. Colvin*, 2016 WL 4768806, at *7 (quoting *Vandermark v. Colvin*, 2015 WL 1097391, at *13). However, the Court finds that, here, the vagueness of the VE's testimony, the ALJ's lack of further inquiry regarding that testimony, and the significant difference between the number of jobs available nationally according to the OES and Job Browser pro data renders the ALJ's Step Five determination unsupported by substantial evidence.

Moreover, the VE acknowledged that, with the hypothetical based on the ALJ's RFC determination, "[t]here would be limited unskilled jobs, primarily based upon the occasional reaching and also no fast-paced work." Tr. at p. 157. This acknowledgment combined with the VE's vague testimony (and the ALJ's lack of analysis regarding both) concerns the Court and contributes to the need for remand to properly evaluate whether a significant number of jobs exists in the national economy that Plaintiff can perform.

Finally, the Court notes that, if the Job Pro Browser job numbers represent those available to Plaintiff, the Court would likely find that those numbers (totaling 5,688 jobs nationally) do not constitute a significant number of jobs. Plaintiff cites *Hamilton*, noting that 4,000 to 5,000 jobs nationally is not a significant number of jobs and that remand was necessary in *Hamilton* (where 5,160 jobs were found) for further development on the issue because it was unclear if the list of positions given was an exhaustive list. *Hamilton v. Soc. Sec. Admin.*, 105 F. Supp. 3d at 230. Plaintiff also cites other cases from this district indicating that 8,404 jobs may not constitute a significant number and that 14,000 positions nationally did constitute a significant number. *Waldvogel v. Soc. Sec. Admin.*, 2017 WL 3995590, at *13; *Hanson v. Comm'r of Soc. Sec.*, 2016 WL 3960486, at *14 (N.D.N.Y. June 29, 2016). The Court would generally agree with Defendant that there is no bright line standard, but would find that 5,688 jobs nationally does not appear to constitute a significant number of jobs in the national economy.

## B. Nature of Remand

Remand to the Commissioner for further development of the evidence is appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no useful purpose. *Id*.

Here, the Court finds that the ALJ's Step Five determination is not supported by substantial evidence and, as Plaintiff requests, it is appropriate to remand for proper evaluation of whether a significant number of jobs exists in the national economy that she can perform. Specifically, the ALJ should solicit further testimony from a VE to clarify why the OES and Job Browser pro numbers are so significantly different and whether the OES numbers actually represent work Plaintiff is able to perform within the RFC.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED,** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for further administrative proceedings to determine whether there are a significant

numbers of jobs that Plaintiff can perform in the national economy in accordance with this Decision and Order.

Dated: September 6, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge